-PAID

FILED
CLERK, U.S. DISTRICT COURT
10/30/2026
CENTRAL DISTRICT OF CALIFORNIA
BY BOM DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br>Plaintiff,<br>v.<br><br>GATES FOR ATTORNEY GENERAL 2026, and<br>MICHAEL E. GATES,<br><br>Defendant. | Case No. 8:26-cv-03216- DOC (KESx)<br><br>**COMPLAINT FOR:**<br><br>1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 |

Plaintiff, Jorge Alejandro Rojas, brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendants Gates for Attorney General 2026 ("Gates for AG"), and Michael E. Gates ("Gates"), and alleges based on personal knowledge and information and belief:

## INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone

Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227.

3. This case involves a campaign by Defendants who placed illegal, campaign-related pre-recorded, artificial, and automated texts to Plaintiff's telephone number, which were not consented to.

**JURISDICTION AND VENUE**

4. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct operations in the state of California. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Defendants are located in this district.

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

7. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois. Plaintiff previously resided within this District, and has an "in district" "424" area code telephone number.

8. Defendant Gates for Attorney General 2026 ("Gates for AG") is a California Recipient Committee, Officeholder, Candidate Controlled Committee, State Candidate Election Committee, with a principal address of 19051 Goldenwest St Suite 106, #138 Huntington Beach, CA 92648, with a Treasurer of Lysa Ray located at 3843 S Bristol St Santa Ana, CA 92704.

9. Defendant Michael E. Gates is a person located at 19051 Goldenwest St Suite 106, #138 Huntington Beach, CA 92648.

10. Defendants are each a person as defined by 47 U.S.C. § 153(39).

11. Defendants acted through its agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

12. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

13. The TCPA makes it unlawful to make calls using an automatic telephone dialing system ("ATDS") or with a pre-recorded message without the call recipient's prior express consent.

14. "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)". *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

16. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

17. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

18. The TCPA's definition of unsolicited advertisement applies to "means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

19. The FCC explains in its "Rules for Political Campaign Calls and Texts" that "Robotexts – text messages generated through autodialing – are also considered a type of call and fall under all robocall rules. As text messages generally go to mobile phones, robotexts require the called party's prior express consent. However, political text messages can be sent without the intended recipient's prior consent if the message's sender does not use autodialing technology to send such texts and instead manually dials them." https://www.fcc.gov/rules-political-campaign-calls-and-texts.

20. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. Id. at § 12; see also Martin v. Leading Edge Recovery Solutions, LLC, 2012

WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

21. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id*. at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744.

22. Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

23. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express written consent of the called party." This includes political calls. *See FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules – Biennial Reminder for Pol. Campaigns About Robocalls & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016).

**FACTUAL ALLEGATIONS**

24. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582. The phone number is not associated with a business and is used by Plaintiff solely.

25. Plaintiff is the account holder and customary user of his phone number.

26. Plaintiff previously resided within this District.

27. The text messages were made to an "in district" telephone number.

28. Upon information and belief, the automated text messaging system used by Defendants to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

29. Upon information and belief, the automated text messaging system used by Defendants to send the text messages also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

30. Moreover, the message sent to Plaintiff was drafted in advance and sent out automatically based on pre-programmed parameters.

31. The texting platform uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers, and sequences those numbers in order to automatically dial the numbers and send our text messages en masse. Thus, a random or sequential number generator is used both to store the numbers, and to produce the stored numbers from the list, via the campaign, to the dialing platform itself.

32. In Merriam Webster's Dictionary "voice" is defined as "an instrument or medium of expression." It defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality."

33. The messages sent to Plaintiff by Defendants using their SMS blasting platform employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e. that of an SMS message, to convey a telemarketing communication to Plaintiff. The platform is a man-made humanly contrived program which allows companies to blast out such messages via non-spontaneous methods, i.e. automated methods similar to that of an assembly line in a factory. Such SMS blasting devices are incapable of spontaneity, as they must be programmed by the operator to automatically send messages out, en masse, pursuant to preprogrammed parameters.

34. Merriam Webster's Dictionary, "prerecorded" is defined as "recorded in advance." "Recorded" is defined as "to set down in writing." The text message sent to Plaintiff's cellular telephone via the SMS blasting platform was set down in writing in advance by Defendant, whose employees wrote out the standard automated messages

that were to be sent to Plaintiff and other class members, and by way of preprogrammed SMS blasting, entered the prerecorded message into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendant. Thus, Defendants employed a text message as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

35. Plaintiff was annoyed and felt harassed by the receipt of the text messages from Defendants.

36. A text messaging segment calculator calculates the text, because of length, to be in fact more than one text messages. Upon information and belief, these messages were combined to be presented as one by Plaintiff's carrier or phone. *See* https://twiliodeved.github.io/message-segment-calculator/

37. The text messages sent were generic in nature, clearly meant to be sent to a large group of individuals at once.

38. It would be unreasonable for a human to manually send the text messages at issue to Plaintiff, along with all of the other targets of the text message, and modify each message to include the appropriate relevant information such as the polling location.

39. Defendants may have selected numbers to be texted sequentially (or possibly randomly) and then used publicly available databases to identify the owner of the telephone number dialed when such randomly or sequentially generated text was sent.

40. Even if Defendants "uploaded" a list of telephone numbers to a database, that database or system can still be using a random or sequential number generator to decide the order in which to send the text messages, given that it can't send them *all* at once.

41. For example, the text messaging system may have identified a dialing order to each telephone number for each campaign when sending out the text messages, using a random or sequential number generator.

42. The texts were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator

or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

43. Plaintiff is ignorant of the exact process by which the Defendants used the system they connected to the Sinch telephone service. However, no facts exist to show that Defendants called the Plaintiff in a targeted manner. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc*., No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc*., No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

44. If a text is a call, then the communication conveyed on that "call" must be treated the same as the communication made on an auditory call.

45. A live individual did not send out each individual text message to Plaintiff.

46. Agentless SMS messages sent by computers are clearly artificial.

47. So a text sent in such a manner is an artificial voice, regardless if sent including a video or not.

48. The text messages were sent en masse to many individuals and were pre-written and not personalized in nature except for automated scripting which would insert the relevant information needed to be included. Plaintiff has never provided his consent to be called or texted to Defendant.

49. **Call 1.** On or about October 14, 2026, at 5:08 PM Pacific time, Plaintiff received a text message from Defendants, or an agent acting on their behalf, from telephone number 916-302-8512.

50. The text message was an approximately fifteen (15) second video of Mr. Gates speaking in Spanish which was sent as an mp4 file and 757kb in size.

51. The text message identified above was a pre-recording for reasons including that it contained a pre-recorded voice.

52. **Call 2, 3, 4, 5, 6, 7, 8, 9.** On or about October 14, 2026, at 5:08 PM Pacific time, Plaintiff received a text message from Defendants, or an agent acting on their behalf, from telephone number 916-302-8512.

53. The text message identified above contained the following text: "

I have an important message - please share with your family and friends.

Whether you are voting for Becerra or Hilton for Governor, I am emphatically asking for you to vote for me for Attorney General of California.

My name is Michael Gates and I am running for California Attorney General. I need your vote.

California is broken - crime is high, corruption is rampant, and our families are not safe. This is because our Attorney General Rob Bonta is not fighting for us, he is not fighting crime and he is not protecting our families or businesses.

Bonta's lawlessness is unAmerican.

With a vote for me this November, the Latino Community alone can rescue California. We are patriots and we love the United States - but we must vote for me, Michael Gates if we want to restore law and order.

As your Attorney General, I'll fight for you every day. I'll reduce crime, fight corruption, and protect our families and neighborhoods.

I need your help. Vote for me, Michael Gates, for Attorney General. God Bless and Our Lady of Guadalupe, pray for us!

https://x.com/MichaelGatesESQ

https://www.instagram.com/michael.e.gates

Paid for by Michael Gates for Attorney General 2026. Reply STOP to unsubscribe."

54. Using a text message segment calculator, the text message identified above was actually 8 segments, because of its length. Upon information and belief, the sender likely paid more for these texts because of their length.

55. To the extent that Defendants are utilizing a third-party call center to make calls on its behalf, Defendants named here are vicariously liable for their conduct, as that conduct was made for their own benefit.

56. The calls were made for the purposes of soliciting campaign election contributions and were made using an ATDS and/or a pre-recording.

57. Plaintiff alleges that the calls were made using an ATDS due to indicators including the inclusion of "Reply STOP to unsubscribe" and also the statement "User Opt-In: This program allows users to receive SMS/MMS mobile messages by users opting into the program, for example through online sign-up forms or by texting a keyword to our shortcode number, or any future shortcode numbers. Regardless of the opt-in method used to join the program, you agree that these Terms apply to your participation in the program. The mobile messaging service used to communicate with you through this program requires human intervention for mobile messages to be sent. Therefore, through this program, our SMS/MMS messages are not sent to you by an automatic telephone dialing system. Nevertheless, by participating in the program, you agree to receive autodialed marketing mobile messages and you understand that consent is not required to make any purchase from us. Text opt-in consent data will not be sold or shared with third parties for promotional or marketing purposes. Except as otherwise stated, we don't sell, trade, rent, or otherwise share for marketing purposes your Personal Information with third parties without your consent." available on the website of Defendants, https://www.gates4ag.com/privacy-policy.

58. Plaintiff has never opted into the program being used to send the text messages.

59. The conduct alleged in this action was made willful and knowingly.

60. The TCPA requires telemarketers to provide training to their employees, contractors, etc., and Defendants have failed to properly train the same.

61. Plaintiff did not have a prior business relationship with Defendants.

62. Defendants did not have any consent to call Plaintiff.

63. Defendants have never received contributions from Plaintiff.

64. Plaintiff has not been eligible to vote in an election in California for over 11 years.

65. The fact Plaintiff hasn't been eligible to vote in a California election for over a decade is further evidence that an ATDS was used.

66. Defendants are not an organization exempt from the TCPA.

67. In total, Defendants and/or their affiliates placed at least NINE (9) texts to Plaintiff.

68. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

69. Defendants have a pattern and practice of failing to comply with the TCPA.

70. The foregoing acts and omissions were in violation of the TCPA.

71. Defendants are engaging in violations of the TCPA to get donations.

72. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

73. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

74. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

75. Plaintiff is also entitled to an award of costs.

76. Defendants' calls were not made for "emergency purposes."

77. Defendants' calls to Plaintiff were made without any prior express written consent.

78. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

79. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

80. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

81. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

## COUNT 1. Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

82. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

83. Defendants or one of its affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least NINE (9) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

84. Plaintiff was statutorily damaged at least NINE (9) occasions under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone call described above, in the amount of $500.00 for each.

85. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $13,500.00 plus costs and any other remedy deemed appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and severally, in an amount to be more fully determined at trial, but at least $13,500.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered,
B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),
C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5),
D. All reasonable witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,
E. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,
F. Leave to amend this Complaint to conform to the evidence presented at trial,
G. Any other relief this Court deems proper.

Respectfully submitted,

Dated: October 30, 2026.

JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582